**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HUDSON HOSPITAL OPCO, LLC : <br> d/b/a CHRIST HOSPITAL, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> REGENCY HERITAGE NURSING : <br> and REHABILITATION : <br> CENTER, LLC., *et al.*, : <br> : <br> Defendant. : | Civ. Action No. 16-5673(FLW) <br><br> **OPINION** |

**WOLFSON, U.S. District Judge**:

Plaintiff Hudson Hospital OPCO LLC, d/b/a Christ Hospital ("Christ Hospital" or "Plaintiff") filed this action against defendant Regency Heritage Nursing and Rehabilitation Center, LLC[1] ("Regency" or "Defendant"), for recovery of medical expenses that it provided to a patient ("Patient 1"), who was insured by Regency's health plan. Plaintiff's Complaint asserts four causes of action: (1) claim for benefits under the Employee Retirement Income Security Act ("ERISA") pursuant to § 502(a)(1)(B) and 28 U.S.C. § 1132; (2) violation of fiduciary duties of loyalty and due care in pursuant to 29 U.S.C. § 1132(a)(3); (3) violation of § 503 by denying Plaintiff a "full and fair review" of denied claims pursuant to 29 U.S.C. § 1133; and (4) declaratory judgment pursuant to 28 U.S.C. § 2201. On

---

[1] Plaintiff also named United Healthcare Services, Inc., as a defendant; however, Plaintiff voluntarily dismissed that defendant on December 23, 2016. *See* Notice of Voluntary Dismissal, dated December 23, 2017.

February 16, 2017, the Clerk of the Court entered default judgment against Defendant in the amount of $1,045,909, after Defendant failed to answer or otherwise defend this action. In the instant mater, Regency moves to vacate default judgment, arguing that the service of the Summons and Complaint was improper, and in alternative, the judgment should be set aside pursuant to Fed. R. Civ. P. 60(b). For the reasons set forth below, Regency's motion is **GRANTED**. Defendant must file its answer or otherwise move within fourteen days from the date of the Order accompanying this Opinion. The parties are directed to file, simultaneously, as to the propriety of sanctions in this matter, by no later than November 6, 2017. A hearing on the issue of sanctions shall be held on November 16, 2017.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Regency is a company engaged in the business of operating nursing homes and rehabilitation centers in the state of New Jersey. Compl.,¶ 7. Patient 1, insured by Regency's employer-sponsored health plan ("Regency Health Plan"), was admitted to Christ Hospital on February 6, 2014, through the emergency room. *Id.* at ¶¶ 1, 17. Patient 1 remained at Christ Hospital for 55 days after his admission, and was diagnosed with, and treated for, various medical conditions, including carcinoma prognosis of the abdomen and pelvis with nausea and vomiting. *Id.* at ¶ 18. When he was admitted to the hospital, Patient 1 signed an Assignment of Benefits ("AOB"), by which, he authorized the "direct payment to [Christ Hospital] and/or to any physician of any insurance benefits otherwise payable to [Patient 1] for [his] hospitalization at a rate not to exceed the hospital's

approved rate." *Id.* at ¶ 19. Upon admission, Christ Hospital confirmed with Regency that Patient 1 had insurance and was eligible for coverage, and thereafter, periodically re-confirmed his benefits and authorization for treatment. *Id.* at ¶¶ 20, 21. Ultimately, Patient 1 was diagnosed with, *inter alia*, tuberculous peritonitis. The total cost of his stay and treatment at Christ Hospital was $1,045,559.00. *Id.* at ¶¶ 23, 24. Pursuant to the AOB, Christ Hospital sought benefits payment under the Regency Health Plan.

Regency employed United Healthcare Services, Inc. ("UHS"), to administer claims under the Regency Health Plan as the third-party administrator. *Id.* at ¶ 26. On November 10, 2014, UHS and Regency denied the reimbursement claim from Christ Hospital for Patient 1's treatment, reasoning that his illness was work-related and should be paid by Patient 1's workers' compensation carrier, Tristar Risk Management ("Tristar"). *Id.* at ¶ 27. However, on January 29, 2015, Regency allegedly informed Christ Hospital that Regency's risk management department had no documentation regarding Patient 1's illness being work-related, no report of first injury on file, and further, that Regency could not determine when Patient 1's illness began after reviewing his disability application. *Id.* at ¶ 29. As such, Christ Hospital appealed Regency and UHS's denial of benefits for Patient 1's medical expenses, and to date, Regency has not paid for any part of Patient 1's treatment. *Id.* at ¶¶ 31, 34.

Based on the denial, on September 16, 2016, Christ Hospital filed the instant suit against Regency and UHS. As such, Regency's deadline to file its Answer to the Complaint was November 14, 2016. On January 18, 2017, without

an answer or motion practice from Regency, Christ Hospital requested, and the Clerk of the Court entered, default against Regency. Christ Hospital, by FedEx, sent the request for entry of default, with a supporting declaration, to Regency. After entry of default and notice to Regency of the request for default, on February 14, 2017, Christ Hospital requested the Clerk to enter default judgment against Regency in the sum certain amount of $1,045,909. At the same time, Regency submitted a letter to the Court requesting that the Clerk not enter judgment, to which Christ Hospital responded. Nevertheless, default judgment was entered on February 16, 2017. Thereafter, on March 1, 2017, Regency moved to set aside default judgment before this Court pursuant to Fed. R. Civ. P. 60(b). The bases for Regency's instant motion are as follows: 1) that Plaintiff's service of process was defective; and 2) even if service is proper, judgment should nonetheless be set aside pursuant to the standard set forth by Rule 60(b). Since the motion presented factual disputes, to properly evaluate the parties' arguments, the Court held an evidentiary hearing on June 13, 2017, wherein the Court heard testimony from various witnesses. This Opinion constitutes my findings of facts and conclusions of law following that hearing.

## DISCUSSION

### I.  Standard of Review

#### A.  Service of Process

Federal Rule of Civil Procedure 4(h) provides two methods by which a defendant corporation may be served with a copy of the summons and complaint absent a valid waiver of service. One of the permissible methods of service under

Rule 4(h) requires "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or law to receive service of process." Fed. R. Civ. P. 4(h)(1).[2]

Alternatively, Rule 4(h)(1) provides that service upon a corporation may be made "in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1)." Fed. R. Civ. P. 4(h)(1). Correspondingly, Rule 4(e)(1) states that service may be made "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State." Fed. R. Civ. P. 4(e)(1). In other words, service upon a corporation, or unincorporated associations, may be made in accordance with the New Jersey Rules of Court relating to service of process.

New Jersey Court Rule 4:4-4 governs service of process in New Jersey state courts. New Jersey Court Rule 4:4-4(a)(6) provides that personal jurisdiction can be obtained over a defendant corporation by:

> [S]erving a copy of the summons and complaint in the manner prescribed by paragraph (a)(1) of this rule on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof . . .

---

[2] Rule 4(h)(1)(B) states that a summons and complaint on "a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name must be served on an "officer manager or general agent or any other agent authorized by appointment or law." Fed. R. Civ. P. 4(h)(1)(B). Limited liability companies, such as Defendant, fall under the category of "unincorporated associations." *Erwin v. Waller Capital Partners, LLC*, No. 10-03283, 2010 U.S. Dist. LEXIS 109384, at *14 (D.N.J. Oct. 14, 2010).

N.J. Ct. R. 4:4-4(a)(6).

The New Jersey Supreme Court, in *O'Connor v. Altus*, 67 N.J. 106 (1975), applied a two-pronged test in determining whether service of process was properly effectuated under Rule 4:4. Specifically, in making this consideration, the Supreme Court held that service may be effectuated upon an individual who is not a corporate executive or managing agent if (a) the representative upon which service is made is "so integrated with the organization that [s]he will know what to do with the papers" and (b) if the representative "should stand in a position as to render it fair, reasonable and just to imply the authority to receive service." *Altus*, 67 N.J. at 128 (internal citation omitted) (holding that service was proper upon the receptionist, because "the receptionist was sufficiently integrated with the small organization . . . to know what to do with the papers and it was reasonable for the deputy sheriff to assume she had authority to receive service"); *see Davis v. DND/Fidoreo, Inc.,* 317 N.J. Super. 92, 98 (App. Div. 1998) (citing *Altus* for the proposition that "[d]elivery of process need not be accomplished during a face-to-face meeting with the person upon whom service is to be effected; it is sufficient if the sheriff's officer serves a person whom he can reasonably expect will deliver the process to the appropriate person.").

Moreover, service was found to be properly effectuated where a representative of a corporation, *i.e.*, a receptionist or secretary, explicitly stated that he or she is authorized to receive service, regardless of whether that representative was so integrated within the corporation. *See Trustees of Local*

*478 Trucking and Allied Industries Pension Fund v. Baron Holding Corp.*, 224 N.J. Super. 485, 490 (App. Div. 1988) ("In this case, the deputy did not have 'to imply' that [the receptionist] had authority to receive service. The unrebutted proof shows that [the receptionist] represented to the deputy that she was authorized to accept service.").

### B.    Motion to Vacate Default Judgment

Even if service is proper, default may nonetheless be vacated. Federal Rules of Civil Procedure 55 and 60(b) authorize a district court to enter default and default judgment when the defendant does not contest an action, but the party against whom default judgment has been entered may move to vacate the judgment "within a reasonable time." *Mrs. Ressler's Food Prods. v. KZY Logistics LLC,* 675 Fed. Appx. 136, 139 *(3d Cir. 2017).* A district court may grant a motion to set aside the judgment for "good cause" pursuant to Rules 55(c) and 60(b). *Id.*

"A judgment setting aside the entry of default is within a district court's discretion, and may only be made 'for good cause.'" *Doe v. Hesketh*, 828 F.3d 159, 174–75 (3d Cir. 2016) (quoting Fed. R. Civ. P. 55(c)). "In exercising that discretion and determining whether 'good cause' exists, [the Third Circuit] ha[s] instructed district courts to consider the following factors: '(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct.'" *Hesketh*, 828 F.3d at 175 (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)). "This discretion is not without limits, however, and [the Third Circuit] ha[s] repeatedly stated [its] preference that cases be

disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984); *see $55,518.05 in U.S. Currency*, 728 F.2d at 194–95 ("this court does not favor entry of defaults or default judgments. We require doubtful cases to be resolved in favor of the party moving to set aside the default judgment so that cases may be decided on their merits.") (quotation omitted).

In that regard, the Third Circuit has "emphasiz[ed] the extreme nature of a . . . default judgment," *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 867 (3d Cir. 1984), and "repeatedly [has] stated [its] preference that cases be disposed of on the merits whenever practicable," *Hritz*, 732 F.2d at 1181. Because entry of a default judgment is an "extreme sanction," *Scarborough v. Eubanks*, 747 F.2d 871, 875 (3d Cir. 1984), it is generally disfavored. *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 122 (3d Cir. 1983). "[I]n a close case doubts should be resolved in favor of setting aside the default and reaching a decision on the merits." *Gross*, 700 F.2d at 122. Nevertheless, while the circuit has "adopted a policy disfavoring default judgments and encouraging decisions on the merits, . . . the decision to vacate a default judgment is left to the sound discretion of the trial court." *Harad v. Aetna Cas. and Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir. 1951)).

In considering the three-prong test, whether a defendant can articulate a meritorious defense is a threshold matter. *Resol. Trust Corp. v. Forrest Grove Inc.*, 33 F.3d 284, 288 (3d Cir. 1994). To establish a meritorious defense, defendant's "allegations, if established at trial, would constitute a complete

defense." *$55,518.05 in U.S. Currency*, 728 F.2d at 195; *see Hritz*, 732 F.2d at 1181. But, a defendant seeking to vacate a default judgment must "allege[] specific facts beyond simple denials or conclusionary statements." *$55,518.05 in U.S. Currency*, 728 F.2d at 195. This standard is "more stringent" and exacting than that normally required for an answer to a complaint, because it "requires that a defendant . . . set forth with some specificity the grounds for [its] defense." *Harad*, 839 F.2d at 982. However, such a standard does not require that a defendant's allegations of defense be in such detail that it meets "summary judgment standards." *Poulis*, 747 F.2d at 869.

Relevant to this case, the Third Circuit has recognized the following allegations as sufficient to set forth meritorious defenses in order to vacate default judgment: (1) an insurer's claim that its insurance policy on which a recovery was being sought did not provide coverage in the underlying action, *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 657 (3d Cir. 1982); (2) a potential lack of involvement of a defendant in the distribution chain in a products liability suit, *Hritz*, 732 F.2d at 1181; and (3) a defendant-insurer's reliance on the application of a one-year limitations provision for claims in its policy, even though the plaintiffs disputed that provision's applicability. *Poulis*, 747 F.2d at 870.

## II.    Service

Based on the disputes in the parties' submissions, the Court held a hearing to determine whether service was properly effectuated. I heard testimony from Mr. Carlos Perez, the process server hired by Plaintiff, Ms. Shirley Escobar,

the former receptionist at Regency, and Mr. David Gross, President of Regency. As I commented on the record, I find that Mr. Perez properly served Regency by effectuating service upon Ms. Escobar. Because I have given my conclusions on the record, I will briefly set forth my reasons below.

On October 24, 2016, Mr. Perez, a process server for DGR, served the Summons and Complaint on Ms. Escobar at Regency's Somerset, New Jersey, facility.[3] *See* Declaration of Carlos Perez ("Perez Dec."), ¶ 2, Transcript of Hearing dated June 13, 2017 ("Tr.") at T170:18-24. There is no dispute that Ms. Escobar, who was employed at Regency as a part-time receptionist at the time the Complaint and Summons were served, was seated at the reception desk when Mr. Perez entered that facility. *Id.* at ¶ 3. According to Mr. Perez, after entering the facility, he asked Ms. Escobar if she was a managing agent authorized to accept service of the Summons and Complaint, and based on Mr. Perez testimony, Ms. Escobar "grabbed the documents. She skimmed maybe three, four pages, and then asked where to sign." Tr., T9:24-T10:3. Mr. Perez then handed Ms. Escobar his work order, and Mr. Perez testified that Ms. Escobar placed her signature on that document. *Id.* Mr. Perez also wrote certain physical characteristics of Ms. Escobar on the work order.

---

[3] Regency has two facilities in New Jersey which are located in Lakewood and Somerset. Mr. Gross's main office is located at the Lakewood facility. While, typically, proper service on an unincorporated organization should be effectuated upon an officer or agent of the company, because the Court finds that service was proper based upon apparent authority of a Regency receptionist, *see infra*, the fact that Defendant was not served in its Lakewood facility is not relevant in my analysis, here.

However, Ms. Escobar claimed that she did not recall receiving a copy of the Summons and Complaint, and further, that she has never been authorized to accept such a delivery, and would have made this known to any process server who asked. Escobar Cert., ¶¶ 3, 7.  In that regard, Ms. Escobar testified that as a part of her training at Regency, she was instructed as to the procedures she should follow when she is approached at the reception area with legal papers. Tr. 44:19-24. She further testified that if she is approached with legal papers while sitting at the reception desk, she must report that to the administrator present at Regency on that day. Tr. 45:2-5; 71:13-16. Ms. Escobar insisted that she was trained on, and knew exactly the proper procedure regarding handling the delivery of legal papers at Regency, and that a large part of her responsibilities was to accept incoming packages. Tr. 42:13-15; 43:20-23.  And, it was Ms. Escobar's testimony, and indeed, Regency's position, that Mr. Perez never approached Ms. Escobar to effectuate service.  *See* Tr. 158:8-25.  I do not find Ms. Escobar's testimony in that respect credible.

There is no doubt that Mr. Perez was present at the facility on October 24, 2016.  He describes Regency's Somerset facility in great detail, and indeed, Ms. Escobar corroborated those descriptions.  *See* Tr. 21:2-22:2. While the physical descriptions of Ms. Escobar that Mr. Perez placed on the work order, i.e., height, age and race, do not reflect Ms. Escobar actual attributes, I find that a reasonable person making visual observations would characterize Ms. Escobar in a similar manner, particularly since I had the opportunity to observe Ms. Escobar at the hearing.  Next, I do not find Ms. Escobar's testimony regarding

her signature on the work order credible. When Ms. Escobar was asked to review her print signature on the work order, she responded that she did not print her name on that document. *See* Tr. 78:19-79:7. However, glaringly, Ms. Escobar did not dispute such an issue with her print signature in the certifications submitted in connection with Regency's motion to vacate. When questioned about this discrepancy, Ms. Escobar's answer was vague and unresponsive, *see* Tr. 89:14-91:14, and the only answer she gave emphatically was that she did not sign the work order. But, compellingly, when asked whether she signed the FedEx package containing the notice of default, Ms. Escobar also stated that she did not sign the FedEx's confirmation receipt. Her testimony in this regard lacks indicia of truthfulness, because not only is the signature on the FedEx receipt similar to her signature on her certifications, there is no testimony that anyone else in the Somerset facility besides Ms. Escobar accepted the FedEx package, and there is no dispute that it was received. *See* Tr. 96:16-20; 97:8-11. Her consistent refusal to acknowledge any signature on any documents put into doubt her testimony regarding her print signature on the work order. Indeed, I had the opportunity to observe Ms. Escobar's demeanor on the stand when she answered questions from counsel and from the Court. In my view, the witness' answers sounded rehearsed, and in that regard, it does not appear that those answers reflected what actually occurred. Significantly, at times during the examination, Ms. Escobar provided inconsistent statements, and clearly seemed to be uncomfortable at providing certain responses. In totality, I cannot find Ms. Escobar's version of the event to be entirely credible.

Rather, I find more credible Mr. Perez's testimony of what occurred when he served the Summons and Complaint — that Ms. Escobar accepted the legal documents, quickly browsed through them, and asked where to sign. While it is my belief that Ms. Escobar did not affirmatively and explicitly state to Mr. Perez that she was a managing agent of Regency, I do find that Ms. Escobar accepted service and affixed her print signature on the work order, which led Mr. Perez to believe that Ms. Escobar, a receptionist, had the authority to accept service of process. Indeed, Mr. Perez, a professional process server for many years, has no incentive to provide false information regarding what occurred. His testimony is consistent with his certifications, and his responses on the stand were not vague, unlike Ms. Escobar's answers, which sounded more coached than the truth.

Applying my factual findings to the law, I hold that Christ Hospital's service of process upon Regency was proper. To reiterate, the New Jersey Supreme Court in *O'Connor,* held that service may be properly effectuated on an individual who is not a managing agent if (a) the representative upon which service is made is "so integrated with the organization that [she] will know what to do with the papers;" and (b) if the representative "should stand in a position as to render it fair, reasonable and just to imply the authority to receive service." *Altus*, 67 N.J. at 128. As to the first factor, based on Ms. Escobar's own testimony, Ms. Escobar, having been employed at Regency for over two years at the time when service of process in question took place, was apparently aware

what she must do when she accepted packages, including legal documents.[4]  *See* Tr. 44:19-45:5. In that regard, she understood, as a receptionist, what Regency required of her when she was presented with legal documents, i.e., refuse service and immediately inform an administrator. *Id.* Thus, I find that Ms. Escobar was sufficiently integrated with Regency such that she knew the steps to take when Mr. Perez presented her with the Summons and Complaint. Of course, because I already found that Ms. Escobar signed for the Summons and Complaint on behalf of Regency, she clearly did not follow those steps.

---

[4]     Defendant argues that even if service was proper, the default judgment must nonetheless be vacated because Regency's established policy prohibited Ms. Escobar from accepting service of any process or other legal documents. In that connection, Regency's President, David Gross, testified to having instituted some unwritten procedure for accepting service of process at Regency. Tr. 134:11-22. This company policy, according to Mr. Gross, would have prevented Ms. Escobar from accepting service and that only his administrators could accept service on Regency's behalf. Mr. Gross also testified that these administrators knew that they must transmit important legal papers to him. *See* Tr. 134:11-19; 134:20-135:4. Other than Mr. Gross's testimony in this regard, there is no other corroborating evidence, documentary or otherwise, to support the existence of this policy and procedure. Indeed, having made my findings of fact, Ms. Escobar did not follow such an alleged procedure when she received the Summons and Complaint from Mr. Perez, and similarly, the FedEx package for which she signed also was not transmitted to administrators, including Mr. Gross. In addition, in at least one other instance, another Regency employee, Frumy Rappaport, appeared to have accepted service of process in an unrelated case, which purportedly would have violated the company policy about which Mr. Gross testified. *See* Tr. 145:14-146:4. Based on all these instances, without more evidentiary support, I cannot find Mr. Gross's testimony regarding an established company policy credible. Rather, while there may be occasions where the administrators have provided some instructions to Regency employees regarding acceptance of packages in general, based on the record before me, I do not find that an **established** procedure regarding service of process existed at the time Regency was served by Christ Hospital. Based on this finding, I reject Defendant's argument in this regard.

Next, I further find that by signing the work order on behalf of Regency, Ms. Escobar gave Mr. Perez the impression that she had authority to accept service. Stated differently, this type of conduct on Ms. Escobar's part renders it fair, reasonable and just to imply that she had the authority to receive service. On this point, as I have set forth *supra*, New Jersey courts have found service proper when a receptionist holds herself out as having the authority to receive service, even if that employee does not have such authority. *Trustees of Local 478*, 224 N.J. Super. at 490; *Altus*, 67 N.J. at 128. Having met both factors, the Court finds that Plaintiff properly served Regency when Mr. Perez delivered the Summons and Complaint to Ms. Escobar. Although Ms. Escobar was not a managing agent, by signing the work order and accepting the legal documents, Ms. Escobar held herself out as a representative of Regency who was authorized to accept service. Accordingly, I find that service was properly effectuated on October 24, 2016. However, even if service was proper, I still have to examine whether vacating default is appropriate under Rule 60(b).

## III. Motion to Vacate Default Judgment

### A. Meritorious Defense

In evaluating a motion to vacate default judgment, "[t]he threshold question . . . is whether [defendant] has established a meritorious defense. . . . The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (quoting *Tozer v. Charles A. Krause Mill. Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). The defendant

must "set forth with some specificity the grounds for his defense," so the court may determine its substantive merit. *Harad*, 839 F.2d at 982.

On the element of meritorious defense, Regency has arguably presented meritorious defenses to Plaintiff's claims. The fundamental issue in this case is insurance coverage, and according to the Complaint, there is a dispute as to which of Regency's insurance carriers is responsible for Patient 1's claims, based on whether his diagnosed illnesses were work-related. Compl., ¶ ¶ 26-29. Indeed, according to Regency, its Controller, Aaron Stefansky, identified Patient 1 as a former Regency employee, who worked his last day at Regency on January 30, 2014. *See* Aaron Stefansky Certification ("Stefansky Cert."), ¶ 4. On March 7, 2014, Patient 1 signed a temporary disability benefits claim form, which stated, "I am working in a nursing home in Somerset so I think that's where I get [sic] it." *Id.* at ¶ 5. During this time period, Regency carried Workers' Compensation insurance for its employees at the facility where Patient 1 worked. That insurance provided coverage for bodily injury by accident and by disease. *Id.* at ¶ 6. Thus, Regency has sufficiently articulated that Patient 1's coverage could be made under Regency's Worker's Compensation insurance, rather than its health insurance plan. While Plaintiff argues, with some evidentiary support,[5] that Defendant's Worker's Compensation carrier, Tristar Risk Management, had

---

[5]     In connection with this motion to vacate, I permitted the parties to exchange limited discovery on the issue of meritorious defense. While Plaintiff has presented some evidence to rebut Defendant's defenses, Defendant also responded with its own evidence to further support its position. At best, there are issues of facts that I cannot resolve here, and guided by the Third Circuit's preference for disposing matters on the merits, the prudent course is to vacate default and allow these issues to proceed on the merits.

previously denied a reimbursement claim based on worker's compensation, Defendant disputes Plaintiff's position in this regard. In evaluating Defendant's defenses, my task here is not to examine the parties' evidence; Plaintiff's injuries may or may not have been work-related, but the ultimate question on causation is to be resolved at later stages of this litigation — not on a motion to vacate default judgment. *See, e.g., Farrell v. Cty. Van & Storage, Inc.*, No. 96-1174, 1996 U.S. Dist. LEXIS 23178, at *5-6 (E.D.N.Y. Nov. 25, 1996); *NuMed Rehab., Inc. v. TNS Nursing Homes of Pennsylvania, Inc.*, 187 F.R.D. 222, 224 (E.D. Pa. 1999). Instead, I find, at this stage, that Regency's coverage defense could completely absolve it from liability.

Moreover, Regency also raises a timeliness defense. The health plan under which Plaintiff alleges Patient 1 was entitled to benefits stipulates that health insurance benefits are terminated on the first of the month following a member's termination of employment with Regency. *Id.* at ¶ 7. Patient 1's last day of work for Regency was January 30, 2014. *Id.* at ¶ 4. Thus, Regency argues that Patient 1's health benefits may have terminated February 1, 2014, five days prior to Patient 1 entering Christ Hospital for treatment. I also find this defense to be meritorious.

Finally, Regency further argues that there is substantial doubt whether, under Third Circuit law, Plaintiff has standing to pursue its ERISA Claims based on the "Assignment of Benefits." In that connection, it is Regency's defense that the Assignment of Benefits only provides Plaintiff to "direct payment," which, Regency argues, is not sufficient to confer standing upon Plaintiff to pursue the

full range of ERISA claims that Plaintiff has brought in this case. Because Defendant raises issues with Plaintiff's standing to bring all or some of its claims, I find that Defendant's position, if proven true during litigation, would be a meritorious defense to liability.

Based on Defendant's positions concerning the applicability of Regency's Workers Compensation insurance, Patient 1's eligibility for benefits at the time of hospitalization, and the sufficiency of Christ Hospital's submission of its claims for payment, the Court finds that Regency has sufficiently demonstrated — with the requisite specificity — that it has meritorious defenses to Plaintiff' claims.

### B.    Prejudice to the Plaintiff

"Prejudice to the plaintiff exists where a defendant is judgment-proof or where 'there has been a loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment.'" *Alliots v. Meat House Franchising, LLC,* 2014 WL 3517777, at *3 (D.N.J. July 14, 2014); *see Julaj v. Tau Assocs. LLC,* 2013 WL 4731751, at *4 (D.N.J. 2009) (vacating default judgment because "the inconvenience and expense to a plaintiff of having to litigate on the merits do not rise to the level of prejudice."). Further, prejudice can be established when a plaintiff's "ability to pursue the claim has been hindered...." *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.,* 175 Fed. Appx. 519, 524 (3d Cir. 2006) (citing *Feliciano v. Reliant Tooling Co.,* 691 F.2d 653, 657 (3d Cir. 1982)).

Plaintiff's arguments concerning prejudice are based solely on Defendants' delay in responding to the Summons and Complaint. Plaintiff contends that this delay, taken in consideration with Defendant's alleged lack of a meritorious defense and culpable conduct, warrant upholding the judgment. However, nowhere does Plaintiff argue that if the Court were to vacate default judgment, there would be a loss of available evidence, or any increased potential for fraud. More importantly, there is no evidence that Plaintiff would be hindered from prosecuting its claims against Defendant if judgment were to be vacated. Indeed, delay in litigating does not constitute prejudice sufficient to allow default to stand. *See Caruso v. Occhiogrosso*, No. 11-1951, 2013 U.S. Dist. LEXIS 95265, at *6 (D.N.J. Jul. 9, 2013); *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656-57 (3d Cir. 1982). And, Plaintiff has conceded that point by stating in its brief that delay alone may not be a sufficient degree of prejudice to warrant upholding default judgment. Thus, I do not find that Plaintiff would be prejudiced.

## C.    Culpable Conduct

The standard for "culpable conduct" in the Third Circuit requires evidence of "willfulness" or "bad faith" on the part of the non-responding defendant. *Hritz*, 732 F.2d at 1182. "[T]he words 'willfulness' and "bad faith' are not talismanic incantations which alone resolve the issue" but rather "are simply terms to guide the district court by expressing [the Third Circuit's] preference for avoiding default judgments where the circumstances do not justify such a result." *Id.* at 1182-183. "Appropriate application of the culpable conduct standard requires that as a threshold matter more than mere negligence be demonstrated." *Id.* at

1183. Certainly, "willfulness" and "bad faith" include acts intentionally designed to avoid compliance with court notices. The case law, however, is bereft of precedent limiting the availability of default judgment to this narrow band of "knowing" disregard for court-mandated procedures. *Id.* Rather, a finding of reckless disregard for repeated communications from the plaintiff and the court, combined with the failure to investigate, can satisfy the culpable conduct standard. *Id.*

Here, Regency, through the testimony of Mr. Gross, claims that it was unaware that Christ Hospital had filed suit until on or about February 14, 2017, approximately five months after the Complaint was filed. Without admitting that Ms. Escobar was, in fact, served, Regency contends that if she were, she never provided the documents to anyone at Regency. As such, no one with authority to respond was made aware of the case until February 14, 2017. David Gross Certification ("Gross Cert."), ¶ 5. After learning that default had been entered, Mr. Gross retained counsel, on February 17, 2017, to participate in the litigation. Gross Cert., ¶ 8. To put it succinctly, it is Regency's position that because neither Mr. Gross, nor any administrator, was aware that Regency had been served by Plaintiff, its lack of knowledge absolves the company of any culpable conduct. However, based on the record before me, it is certainly undisputed that Mr. Gross and other administrators at Regency had notice of this lawsuit being filed prior to the entry of default, but they chose to ignore it. And, in that regard, there are instances during Mr. Gross's testimony where he offered half-truths or misrepresentations to the Court.

On the day of the evidentiary hearing, it was Mr. Gross's testimony that he did not receive a copy of the Complaint in this case until February 2017, after he retrieved the FedEx package containing the Notice of Default sent by Plaintiff. The following is counsel's exchange with Mr. Gross on direct-examination:

> Q. Did anyone email or fax [the Complaint] to you?
> A: Yes.
> Q. Who?
> A. My attorney originally, Richard Feldman.
> Q.  When was that?
> A. When I called him up and I said: hey, I got a FedEx here that's a default judgment, so he looked into the case.
> Q.  And that was the first time?
> A. Yes.
> Q. Can you approximate when that was?
> A. In February [2017].

*See* Tr. 109:09-110:8.  Subsequent to the hearing, this Court instructed counsel to submit additional certifications regarding a facsimile, containing the Complaint, sent by United Health's Attorney, Francis X. Manning, to Regency. The certifications reveal that Regency received a copy of the Complaint in this case on November 8, 2016.  Chaya Schiff, Payroll and HR Manager for Regency, received these documents and handed them to her supervisor, Aaron Stefansky, Regency's Controller, who, in turn, handed them to David Gross. *See, e.g.,* Chaya Schiff Certification ("Schiff Cert.").  Mr. Gross also submitted a certification — after having given his testimony — "clarifying" that he did in fact receive a copy of the Complaint in November 2016, which names Regency as a defendant in this suit.  This admission is clearly at odds with his testimony under oath.

Mr. Gross further testified that in November 2016, he also spoke to an attorney representing former co-defendant United Healthcare, who informed Mr.

Gross that United Healthcare was being sued, and that Regency was a party to that suit as well. *See* Tr. 110:19-22. Mr. Gross communicated with David Rubenstein, his contact at United Healthcare, who told Mr. Gross that he had no information about the suit. Tr. 111:1-15. Without investigating further, Mr. Gross decided, that since Regency had not been served, to his knowledge, the call from United Healthcare could have been a mistake. Tr. 110:16-18. But, around the same time frame, Mr. Gross indeed received a copy of the Complaint naming Regency as a defendant from United Health's attorney, and he sent an email to his controller acknowledging receipt of the Complaint, but deliberately chose to ignore the Complaint because Regency had not been formally served. These facts belie Mr. Gross's testimony that "[n]obody knew what was going on" at the time he spoke with Mr. Rubenstein. Tr. 126:25-127:16. While Mr. Gross may not have known that Regency had been served through Ms. Escobar in October 2016, he knew for a fact that Regency was the subject of a lawsuit brought by Plaintiff as early as November 2016.

Even after receiving the actual complaint that had been filed against Regency, Mr. Gross continued to exhibit a cavalier attitude towards a federal lawsuit against his company. I find extremely troubling that Mr. Gross would deliberately bury his head in the sand and refuse to take any investigative steps to inquire about the lawsuit or engage an attorney. In fact, it was not until Mr. Gross retrieved the FedEx package containing the notice of default, in February

2017, that he finally took any action to respond to the lawsuit.[6]   And, at that time, it was already excessively tardy.  Indeed, it is not difficult for this Court to find that Mr. Gross's careless approach led to the unnecessary motion practice and the evidentiary hearing that ensued after Regency responded to the lawsuit.

Those findings aside, however, the applicable standard is culpable conduct.  As I review the precedents in this legal context, I have not been able to locate a case, and Plaintiff has not cited any, where a defendant was found to be culpable when that defendant did not have actual knowledge or notice that service had been effectuated.  Indeed, Mr. Gross stated that he did not take any action with regards to the copy of the Complaint he received by fax, because in his view, Regency had not been formally served.  There is no evidence that Mr. Gross was aware that Plaintiff had delivered the Complaint to Regency through Ms. Escobar in October 2016.  Mr. Gross's testimony in this regard — that he did not have that requisite knowledge — is uncontroverted by Plaintiff or the record.  Therefore, I cannot find, based on this record, that Mr. Gross ignored a complaint that was delivered by Plaintiff to Regency.  *See, e.g., Glashofer v. New Jersey Manufacturers Ins. Co.*, No. 15-3601, 2016 WL 4204549, at *4 (D.N.J.

---

[6]     I also take issue with Mr. Gross's testimony that he does not regularly check his mail at the Somerset facility, to which the FedEx package was sent from Plaintiff's law firm in mid-January 2017.  On one hand, Mr. Gross boasts about the policy and procedures implemented at Regency regarding how employees, including himself, should handle mail in the office.  But, on the other hand, the record is clear that Mr. Gross had failed to adhere to his own alleged policies by ignoring his mail in Somerset for weeks at a time.  And, more importantly, none of his employees alerted him to the package.  If Mr. Gross receives legal documents at Regency, as he has so testified, his behavior in this respect demonstrates extreme carelessness.

Aug. 9, 2016)(finding negligent conduct when defendant was not aware that the summons and complaint were served when the pleadings were "never scanned into the system and it was never forwarded in any form to the claims department for appropriate handling."); *Acevedo v. Cool Power, LLC*, No. 14- 0253, 2015 WL 1014392, at *6–10 (E.D.N.Y. Mar. 9, 2015); *Llolla v. Karen Gardens Apartment Corp.*, No. 12-1356, 2016 WL 233665, at *2–3 (E.D.N.Y. Jan. 20, 2016); *see also Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242, 246 (3d Cir.1951)(holding no gross neglect where the defendant, a Wisconsin corporation, did not receive notice of the suit*).*

Thus, while I find Mr. Gross's behavior extremely troubling, the Court is constrained to hold that Mr. Gross's conduct, viewed under the relevant culpability standard in the context of a motion to vacate default judgment, does not rise to the level of willful or bad faith behavior, albeit it certainly teeters on the line of recklessness. Finally, I note that once Mr. Gross was aware that a default has been entered, Regency's counsel, within a matter of days, filed a response to the request for default judgment, as well as the motion to vacate default judgment. Because the evidence does not support the kind of reckless or willful conduct required to be present on the part of Regency in order to find culpability, and having analyzed the other factors, the Court vacates default judgment.

While Mr. Gross's behavior does not constitute culpable conduct, his actions may still very well be sanctionable pursuant to this Court's inherent powers "to achieve orderly and expeditious disposition of cases," including "the

ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). As I explained previously, the manner in which Regency has decided to approach this case has not only necessitated motion practice by opposing counsel, but it has multiplied proceedings in this case, wasting this Court's valuable judicial resources and time. Accordingly, a hearing will be scheduled to address the issue of sanctions.

## CONCLUSION

For the reasons set forth in this Opinion, Defendant's motion to vacate default judgment is granted. Defendant shall file its answer or otherwise move within fourteen days from the date of the Order accompanying this Opinion. The parties are directed to file, simultaneously, briefs as to the propriety of sanctions in this matter, by no later than November 6, 2017. A hearing on the issue of sanctions shall be held on November 16, 2017, at 11:00 a.m.

Dated: October 30, 2017

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge